# UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY
M.L. KING, JR.  FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

**FILED**
**JAMES J. WALDRON**

**DEC 0 6 2012**

**U.S. BANKRUPTCY COURT**
**NEWARK, N.J.**
BY _Margaret Oles_ DEPUTY

**MORRIS STERN**
BANKRUPTCY JUDGE

Phone:  (973)   368-1244
Fax:      (973)   645-3696

December 6, 2012

Powers Kirn, LLC
William M.E. Powers III, Esq.
728 Marne Highway, Ste. 200
Moorestown, NJ   08057
Attorneys for Deutsche Bank National Trust
Company, as Trustee for the Holders of the
First Franklin Mortgage Loan Trust 2006-FF7,
Mortgage Pass-Through Certificates,
Series 2006-FF7

Goldman & Beslow, LLC
David G. Beslow, Esq.
7 Glenwood Avenue, Ste. 311B
East Orange, NJ   07017
Attorneys for Debtor

Ms. Brenda Parks
a/k/a Brenda Calloway
479 Irvine Turner Boulevard
Newark, NJ   07108
Debtor

Marie-Ann Greenberg, Esq.
30 Two Bridges Road, Ste. 330
Fairfield, NJ   07004
Chapter 13 Trustee

## LETTER OPINION
## ORIGINAL FILED WITH THE CLERK OF THE COURT

Re:    In re Brenda Parks a/k/a Brenda Calloway
       Case No. 12-13045 MS

Dear Counsel:

Reconsideration is sought of this Court's August 16, 2012 decision, attached hereto as

Exhibit A.   No change in the facts or applicable law has developed since the decision was

rendered, but the mortgagee/assignee of rent, Deutsche Bank, contends that the decision fails to

account for the import of *Associated Co. v. Greenhut*, 66 F.2d 428 (3d Cir. 1933).   However, that

case is not contra-precedent to this Court's August decision.

**LETTER OPINION**

Page 2
December 6, 2012

I.    *The Greenhut Case is Factually Different From the Matter at Bar.*

Greenhut cites its 1933 view of this circuit's rule of law as follows:

> The rule of law in this circuit is uniform that, as between
> mortgagee and trustee in bankruptcy, the rents, collected
> *between adjudication and the sale under foreclosure
> proceedings,* belong to the mortgagee under claim of
> deficiency where the proceeds of the sale are insufficient to
> pay the mortgage indebtedness.    The mortgagee is the
> equitable owner of the bankrupt's real estate covered by the
> mortgage, and it would be inequitable to take the rents from
> what is really his property and divide them among general
> creditors.    66 F.2d at 429 (emphasis added).

As indicated in this Court's August 16, 2012 decision, the fund created by post-petition collection

of assigned rents *up to the point of confirmation* in a Chapter 11 case or, as here, a Chapter 13 case,

has spawned controversy and at least four different potential precedential positions.    That

precedent is not apposite *sub judice.*    If one can draw a strained analogy between *Greenhut*

(which, significantly, appears to be the equivalent of a Chapter 7 liquidation case), and modern

statutory rehabilitation or reorganization cases, the *Greenhut* decision roughly parallels the

nonapposite cases which attribute *pre-confirmation* rental funds.    The *Parks* issue is one of

*post-confirmation* application of assigned rents, a distinctly different matter than *Greenhut.*[1]

II.    *The Movant Misconceives the Nature of the Collateral and its Valuation Upon
Confirmation.*

It is emphasized that $180,000 is the would-be confirmation date value of the subject real

property.    This includes "brick and mortar" as well as land *as an economic, income-producing

unit.*    The hypothetical confirmation date sale price of the real estate *including* its potential for

---

[1] It should also be clear that the *Greenhut* Court would not countenance a result which would favor general unsecured
creditors of the bankrupt with the pre-foreclosure-sale rents when a deficiency developed upon the sale.    "The
mortgagee is the equitable owner of the bankruptcy's real estate covered by the mortgage, and it would be inequitable
to take the rents from what is really his property and divide them among general creditors."    66 F.2d at 429.

**LETTER OPINION**

Page 3
December 6, 2012

generating future income would *at market* thus be $180,000.    A non-severable component of that

current market value of the real estate is its potential for generating future income, which *when*

*produced*, shall have already been accounted for as part of the confirmation date collateral and its

value.    The bank's concept of separating the *future* stream of income from the confirmation date

collateral *as valued* is incorrect.    Such is the situation notwithstanding the mortgage transaction

documentation mechanics embodied in a mortgage and note, plus an assignment of rents.

III.    ***Greenhut Obviously Has Been Affected By Both Case and Statutory Law Developments***
        ***Since 1933.***

        A.    *Greenhut* is outdated federal common law.

        The rule created in *Greenhut* is based upon federal common law, i.e., six earlier federal

decisions.    *See* 66 F.2d at 429.    Thus, the bank asks this Court to apply today a federal common

law decision predating Congress's passage of the Bankruptcy Code in 1978, and the entire history

of case law and statutory development in bankruptcy since 1933.

        Fundamentally, absent an overriding federal interest, *Butner v. United States*, 440 U.S. 48,

55 (1979) essentially "wrote out" federal common law as the substantive law of property in

bankruptcy proceedings.

> Property interests are created and defined by state law.
> Unless some federal interest requires a different result, there
> is no reason why such interests should be analyzed
> differently simply because an interested party is involved in
> a bankruptcy proceeding.

For purposes of defining state property rights (as with mortgages and rent assignments), the

applicable law is state law (not federal common law).    *Metlife Capital Fin. Corp. v. Washington*

*Ave. Assoc., L.P.,* 313 N.J. Super. 525 (App. Div. 1998) was thus a prominent part of this Court's

**LETTER OPINION**

Page 4
December 6, 2012

August decision.  *Greenhut* has been marginalized, if not eliminated as precedent, for modern

bankruptcy cases.  *Cf. Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

 B.  Statutory law, without antecedents existing in 1933, controls the matter at bar.

 The August decision is rooted in 11 U.S.C. § 506, and in particular § 506(d).  That

lien-voiding provision did not exist at the time of *Greenhut*.  *See In re Larson*, 99 B.R. 1, 2

(Bankr. D. Alaska 1989).  And, of course, the entirety of statutory bankruptcy law has been

transformed (several times) since *Greenhut*.

***Summary of Conclusion***.

 Reconsideration is denied; *Greenhut* is not relevant *sub judice*.  That case is

fundamentally different as a factual matter, is supplanted by *Butner*, and predates a raft of

development in the statutory law of bankruptcy.  Moreover, the movant misconceives the

composite and inseparable nature of its collateral – income producing real property *and the future*

*stream of income,* all as to be valued at confirmation.

 Very truly yours,

 (United States Bankruptcy Judge

MS/pc

# EXHIBIT A

**FILED**

JAMES J. WALDRON, CLERK

**AUG 1 6 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING, JR.   FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

**MORRIS STERN**
BANKRUPTCY JUDGE

Phone: (973) 645-4693
Fax:    (973) 645-2606

August 16, 2012

Powers Kirn, LLC
William M.E. Powers III, Esq.
728 Marne Highway, Ste. 200
Moorestown, NJ   08057
Attorneys for Deutsche Bank National Trust
Company, as Trustee for the Holders of the
First Franklin Mortgage Loan Trust 2006-FF7,
Mortgage Pass-Through Certificates,
Series 2006-FF7

Goldman & Beslow, LLC
David G. Beslow, Esq.
7 Glenwood Avenue, Ste. 311B
East Orange, NJ   07017
Attorneys for Debtor

Ms. Brenda Parks
a/k/a Brenda Calloway
479 Irvine Turner Boulevard
Newark, NJ   07108
Debtor

Marie-Ann Greenberg, Esq.
30 Two Bridges Road, Ste. 330
Fairfield, NJ   07004
Chapter 13 Trustee

## LETTER OPINION
## ORIGINAL FILED WITH THE CLERK OF THE COURT

Re:    In re Brenda Parks a/k/a Brenda Calloway
       Case No. 12-13045 MS

Dear Counsel:

Following an absolute assignment of rents executed in conjunction with a mortgage and

note, Debtor defaulted on her monthly payment obligation.    At risk of foreclosure of her interest

in a two-family house (one unit owner occupied, the other generating rent), Debtor filed a Chapter

13 petition in bankruptcy.

Her plan of rehabilitation was, *inter alia*, to make monthly plan payments of income and family contributions, while *both using and taking a plan credit for* the assigned rent in meeting her proposed program to pay a "cramdown" amount on her note debt. She does not propose to "cure" and "maintain" her mortgage obligation.

Debtor and her mortgagee/assignee differ somewhat on the debt amount due on the mortgage note (Debtor asserting a $362,846 amount while the creditor claims $393,683). However, Debtor's stated position that the collateral was on the petition date and remains valued at $180,000 is not contested by the mortgagee at this time. Debtor would pay the present value of $180,000 over sixty months (thus including a $15,000 add-on factor for the time delay in payment following confirmation and the plan's effective date).

The partially secured creditor objects to its treatment in the plan and to the plan's confirmation, asserting (among a number of objections[1]) that absolute assignment of rents denies Debtor access to them for plan funding purposes.

It is clear that *In re Jason Realty, L.P.*, 59 F.3d 423, 427, 430 (3d Cir. 1995) denies status as "property of the estate" per 11 U.S.C. § 541(a) for post-default rents which are the subject of an absolute assignment. However, this court does not consider that *Jason* addressed issues of the

---

[1] The mortgagee asserts eight objections to confirmation. Chief among these (apart from Debtor's use of rents to fund the plan) are that Debtor's residence is subject to the anti-modification provision (addressed *infra*), and that mortgage arrears must be *added* to the crammed-down value of the loan in a modification case. With respect to mortgage arrears, the mortgagee's reliance on *Sapos v Provident Inst. of Sav.*, 967 F.2d 918, 926-27 (3d Cir. 1992) is misplaced; *Sapos* required an allowance for arrears in the context of a *cure-and-maintain* plan under 11 U.S.C. § 1322(b)(5), whereas Debtor proposes a *cramdown* under 11 U.S.C. § 1322(b)(2). *See also In re Hussain*, 250 B.R. 502, 507 and 510-11 (Bankr. D.N.J. 2000) clarifying that cure-and-maintain plans and cramdown are mutually exclusive. Remaining objections include improper cramdown interest rate, and, overall lack of feasibility.

**LETTER OPINION**

Page 3
August 16, 2012

assignee's *accountability* for those rents to the extent of impact, if any, on plan confirmation.

And, it is established that under the applicable New Jersey law assignees of rent must *account* for

rents collected and must *credit* the mortgage debt to the extent the accounting reflects fund

availability after deducting reasonable expenses. *Metlife Capital Fin. Corp. v. Washington Ave.*

*Assoc., L.P.*, 313 N.J. Super. 525, 531-32 (App. Div. 1998), *aff'd in relevant part, rev'd in part,*

159 N.J. 484, 503-04 (1999).

  The yet-to-be addressed rent accountability issues could affect plan feasibility (i) by

satisfying certain Debtor's anticipated and scheduled expenses (such as real estate taxes), and (ii)

by reducing the mortgage amount required to be paid *within* the plan.   Focusing on plan mortgage

payment reduction (if any), the parties would apparently be at odds.   The mortgagee-assignee

contends *inter alia,* that any net proceeds may be applied to the *full debt amount* (discounting the

cramdown), while Debtor would undoubtedly seek to have the credit applied to the lesser

cramdown balance by the parties at this time.   Yet argument on these positions is not

well-developed.

  Many courts have addressed the issue of post-petition application of assigned rents in the

context of adequate protection and stay relief motions.   Others have considered application of rent

collected and accrued (particularly post-petition) on collateral valuation at the confirmation stage.

*See* Sally Nealy, *When Is an Assignment of Rents Absolute and When Is It for Purposes of*

*Security?* SG108 ALI-ABA 221 (2002) (structuring at least four precedential positions; this court

does not necessarily endorse this article's ultimate conclusions).

**LETTER OPINION**

Page 4
August 16, 2012

In the immediate case, there might be no *current* fund available to impact on the cramdown

valuation,[2] nor are *threshold* adequate protection and stay relief issues before the court.    Rather,

(i) assuming cramdown,[3] and (ii) *Jason* as placing future rents in the hands of the assignee (as this

court will now order),[4] the issue of how net rental proceeds (if any) will be credited

*post-confirmation* should be addressed as a primary matter.

While pre-confirmation rent collection Chapter 11 and Chapter 13 cases could have a

bearing on analysis of feasibility issues at confirmation, that precedent is substantially less than

uniform, addresses issues not currently before the court, and is not dispositive of the impact of

necessary creditor accounting on plan feasibility assessment at the confirmation stage.    Those

pre-confirmation and/or confirmation valuation cases emphasize Bankruptcy Code provisions

including: 11 U.S.C.A. §§ 362, 363, 364, 506(a), 552(b) and the confirmation sections of Chapters

11 and 13.    Yet in the matter at bar, both petition date and would-be confirmation date collateral

value appears *at least at this time* to be uncontested at $180,000 (versus the net debt of

approximately $363,000 to $394,000), thus embedding the pivotal statutory issue in 11 U.S.C.

§ 506(d).    That section in relevant part provides as follows:

**(d)** To the extent that a lien secures a claim against the debtor that is

---

[2] Debtor should at least account for what appears to be her use of rents to support the property post-petition.    If in the future a fund or credit should develop which either party views as affecting valuation at confirmation or the cramdown amount, then such issues will be addressed by the court.

[3] The mortgagee's assertion that Debtor's residence (consisting of debtor-occupied and renter-occupied units) is not subject to the anti-modification provision, 11 U.S.C. § 1322(b)(2), is misplaced.    The mortgagee's attempt to distinguish *In re Scarborough*, 461 F.3d 406, 408, 412 and 414 (3d Cir. 2006) (a similarly-configured property) is unavailing, as is the mortgagee's attempt to characterize Debtor's rental unit as "incidental property" under 11 U.S.C. § 101(13A)(A).

[4] This is obviously at odds with Debtor's plan, which will have to be amended to move from a *use-of-rent* based plan, to an *expense/net proceeds credit* analysis, in order to show feasibility.

---

not an allowed secured claim, such lien is void. . . .

Is the lien avoidance of § 506(d) such that the absolute assignment of rents, to the extent of any net

proceeds, would be credited solely to the allowed secured mortgage amount of $180,000?   Or, as

the creditor would have it, are such rent proceeds attributable to the *total debt* (with "first" credit

dollars to be paid against the portion of the debt *not* allowed as secured debt per § 506(d))?

This court would resolve the issue in favor of Debtor, based upon its reading of § 506(d).

A "lien" is to be avoided to the extent it would endeavor to secure a claim which is not supported

by collateral value.   And, indeed, a "lien" is a "charge against or interest in property to secure

payment of a debt or performance of an obligation."   11 U.S.C. § 101(37).   *See also* § 101(51)

"security interest," i.e., a "lien created by agreement."   While the absolute assignment of rent in

New Jersey is footed in "title" rather than "lien" state law attributes, it is nonetheless "an interest in

property to secure payment of a debt" – that is, a "lien" – for Code purposes.   Hence, § 506(d)

requires avoidance of both the mortgage lien *and* the assignment of rents to the extent both

interests are not supported by the value of the collateral.

The assignment of rents in this case is to be terminated when "all the sums secured by the

Security Instrument [i.e., the mortgage and its attachments] are paid in full" (mortgagee's proof of

claim #7, "1-4 Family Rider (Assignment of Rents)," p.2, § H).   Since the federal override of

applicable New Jersey law per § 506(d) allows only the cramdown amount as "the sum secured by

the security instrument," future rent credits of net proceeds (if any) must be applied only to the

cramdown amount (including appropriate interest).   This conclusion is consistent with § 506(b),

as well as § 506(d), and comports with the essence of *United Sav. Ass'n of Texas v. Timbers of*

**LETTER OPINION**

Page 6
August 16, 2012

---

*Inwood Forest Assoc, Ltd.,* 484 U.S. 365 (1988).

To the extent that an amended plan would be proposed by the Debtor based upon the

assignee's accounting projection for rental receipts, that projection is fundamental.   The parties

are instructed to confer regarding use of rental funds.   Any dispute as to such a projection may be

presented to the court.

In conclusion (i) confirmation is denied based upon Debtor's misconceived *use of rents*

which were absolutely assigned to the mortgage (*see* to *Jason Realty*); (ii) such rents must from

this point forth be subject to direct collection by the mortgagee and any rents collected

post-petition should be accounted for by Debtor; (iii) Debtor and mortgagee shall confer on

projected use of rental proceeds by the mortgagee consistent with New Jersey law but subject to

§ 506(d) as set forth in this opinion, with any dispute as to that projection to be put before this court

for resolution; (iv) Debtor shall, to the extent projection issues are resolved or determined, amend

its proposed plan for confirmation taking into account any appropriate credit for rents projected to

be collected by the mortgagee; and (v) other open issues (including the post-confirmation interest

rate due on the crammed-down amount) should be subject to further negotiation by the parties and,

if unresolved, future determination by the court.   If confirmation date collateral valuation issues

should develop, the court will deal with those at the hearing on confirmation.

Very truly yours,

Morris Stern
United States Bankruptcy Judge

MS/pc